# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2010-IA-00883-SCT

*LEMON DROP PROPERTIES, LLC*

*v.*

*PASS MARIANNE, LLC AND ALFONSO REALTY, INC. (d/b/a COLDWELL BANKER ALFONSO REALTY, INC.)*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/10/2010 |
| TRIAL JUDGE: | HON. ROGER T. CLARK |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | STEPHEN WALKER BURROW |
| | JAMES H. COLMER, JR. |
| | ANN M. HALPHEN |
| ATTORNEYS FOR APPELLEES: | GAIL D. NICHOLSON |
| | CHESTER D. NICHOLSON |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND REMANDED IN PART - 10/20/2011 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**RANDOLPH, JUSTICE, FOR THE COURT:**

¶1.    This interlocutory appeal proceeds from an order of the Circuit Court of Harrison County, Mississippi, First Judicial District, which granted the "Motions to Compel Arbitration" of Pass Marianne, LLC ("Pass") and Alfonso Realty, Inc. ("Alfonso"). On appeal, this Court considers (1) whether Pass waived its right to arbitration, and (2) whether a principal's waiver of its contractual right to arbitrate operates to waive that right for its agent.

**FACTS AND PROCEDURAL HISTORY**

¶2. In 2005, Pass entered into a contract with Carl E. Woodward, LLC ("Woodward") for the construction of a new condominium development, Pass Marianne Condominiums, in Pass Christian, Mississippi. On February 8, 2005, Pass and Lemon Drop Properties, LLC ("Lemon Drop") entered into a "Preconstruction Sales and Purchase Agreement" ("Agreement") for Unit No. 209 within the Pass Marianne Condominiums. Regarding Alfonso, the Agreement provided that:

> [e]ach party hereby agrees to indemnify and hold the other harmless from and against any liability for any claims of any broker claiming by, through or under it. SELLER has not listed this property with any real estate firm, however on certain transactions, [Alfonso] has represented the SELLER. *SELLER'S agent with respect to those specific transactions is [Alfonso], which represent the SELLER and IS NOT a Buyer's agent and Buyer acknowledges that he is a "customer" of Realtor. The real estate agency disclosure form may be attached hereto as if a real estate broker was a part of this transaction.* PURCHASER ALSO ACKNOWLEDGES THAT THE PRINCIPALS OF [PASS] ARE LICENSED REAL ESTATE BROKERS AND ARE, IN ALL CASES, REPRESENTING THEMSELVES AND [PASS]. WHEN EITHER ALFONSO AND/OR KETCHINGS PRESENTED THE PROJECT TO A POTENTIAL PURCHASER AND OBTAINED THE RESERVATION AGREEMENT OR THIS CONTRACT OR ANY OTHER AGREEMENT, *THE AFOREMENTIONED ALFONSO* AND KETCHINGS *WERE ACTING IN THEIR CAPACITY AS THE SELLER AND NOT AS A LICENSED REAL ESTATE BROKER.*

(Emphasis added.) The Agreement also contained the following provision:

> ARBITRATION. It is agreed that the subject matter of this Agreement substantially involves interstate commerce. Any disagreement or question between the parties which shall arise out of this Agreement, its breach or otherwise related to the development shall be submitted to arbitration under the Rules of the American Arbitration Association or as the parties may later agree in writing. The arbitration decision shall be binding on both parties. The parties renounce all right to take legal action except to enforce any arbitration award, which award shall be a condition precedent to any right of legal action that either party may have against the other.

2

¶3. Because of Hurricane Katrina, construction of the Pass Marianne Condominiums was not completed until 2007. On October 3, 2007, Pass executed a warranty deed conveying Unit No. 209 to Lemon Drop, and Woodward furnished a "Warranty of Completion of Construction" to Lemon Drop.

¶4. On October 28, 2008, Lemon Drop filed a Complaint in the circuit court against Pass and Woodward, which sought, *inter alia*, rescission of the Agreement due to alleged defects in design and construction. The Complaint failed to attach a copy of the Agreement. *See* Miss. R. Civ. P. 10(d) ("[w]hen any claim or defense is founded on an account or other written instrument, a copy thereof should be attached to or filed with the pleading unless sufficient justification for its omission is stated in the pleading.").

¶5. On December 22, 2008, Pass filed its Answer, along with a cross-claim against Woodward for fraud, defamation, and breach of contract. The pleading requested a jury trial and did not invoke an arbitration plea against Lemon Drop. On March 6, 2009, Pass joined in an agreed "Order Setting Trial Date." Subsequently, Pass propounded and responded to written discovery requests with both Lemon Drop and Woodward.

¶6. On June 5, 2009, Lemon Drop filed a "Motion to Amend Complaint," seeking to add Alfonso as a defendant.[1] In response to Lemon Drop's "Motion to Amend Complaint," Pass pleaded the following:

> [w]hile it is still the preference of [Pass] to proceed in Court consistent with the Cross-Claim of [Pass] against [Woodward], in the event that either the pending Motion to Compel Arbitration filed by [Woodward] or the Motion to Bifurcate or Sever Cross-Claim filed by [Lemon Drop] is granted *then, and*

---

[1]Lemon Drop attached the Agreement to this pleading.

*only then*, [Pass] would assert their contractual right to arbitration of any claims of [Lemon Drop] as to [Pass].

(Emphasis added.) Thereafter, the circuit court granted Woodward's "Motion to Compel Arbitration" as to Pass's cross-claim against Woodward.

¶7. On August 27, 2009, after the circuit court granted the "Motion to Amend Complaint," Lemon Drop filed its "First Amended Complaint," which named Pass, Woodward, and Alfonso as defendants. Multiple claims were asserted against Alfonso which related to, and arose out of, the transaction.[2]

¶8. On September 11, 2009, Pass filed its "Answer; Affirmative Defenses; and Motion to Compel Arbitration" in response to the "First Amended Complaint." On September 30, 2009, approximately one month after the "First Amended Complaint" was filed, Alfonso filed its "Answer, Affirmative Defenses and Motion to Compel Arbitration." Alfonso asserted that, because it had acted as Pass's agent, any claim against Alfonso would be subject to the Agreement's arbitration provision.

---

[2]For instance, Lemon Drop maintained a claim against Alfonso for failure to furnish "the statutorily required Seller's Disclosure Statement." *See* Miss. Code Ann. §§ 89-1-501 to -525 (Rev. 1999). According to Lemon Drop, had that disclosure statement been provided:

> the defects in the Project now alleged by [Pass] to exist within the Project and the Property would have been disclosed before the October 3, 2007 closing. Had [Lemon Drop] know[n] in advance of these defects or other construction "problems" as alleged by [Pass] in its August 2007 complaint against Woodward, it would not have closed on the purchase of Unit 209.

Moreover, Lemon Drop asserted that Alfonso "knew about the alleged defects and poor workmanship in the construction of the Project and Property on and before October 3, 2007[,]" but failed to "fully and completely disclose" all such defects.

4

¶9.	Following a hearing, the parties were ordered to participate in good-faith mediation. After mediation proved unsuccessful, the circuit court entered an order which granted the "Motions to Compel Arbitration" filed by Pass and Alfonso, concluding that as "[t]here has been no 'unreasonable delay' coupled with 'active participation' or any factors which have combined to waive its enforcement[,]" the arbitration provision "is valid and binding upon the parties."

¶10.	Thereafter, Lemon Drop filed a petition for permission to file an interlocutory appeal, which was granted.[3]

## ISSUES

¶11.	This Court will consider:

(1) Whether Pass waived its right to arbitration.
(2) Whether Alfonso, acting as Pass's agent, has a right to compel arbitration.

## ANALYSIS

### I.	Whether Pass waived its right to arbitration.

¶12.	This Court has held that the right to compel arbitration can be waived where a party "actively participates in a lawsuit or takes other action inconsistent with the right to arbitration[,]" which "substantially invokes the judicial process to the detriment or prejudice of the other party." *MS Credit Ctr., Inc. v. Horton*, 926 So. 2d 167, 179 (Miss. 2006) (citations omitted).

---

[3]This Court has stated that there is "but one procedure for this Court's review of a trial court's grant or denial of a motion to compel arbitration, and that one procedure shall be via a direct appeal pursuant to the provisions of Mississippi Rules of Appellate Procedure 3 & 4." *Sawyers v. Herrin-Gear Chevrolet Co., Inc.*, 26 So. 3d 1026, 1032 (Miss. 2010).

5

¶13.   In the case *sub judice*, Pass answered the original Complaint, but failed to assert arbitration as an affirmative defense, and instead demanded a jury trial.  Thereafter, Pass joined in an agreed "Order Setting Trial Date" and engaged in discovery.  Although the Complaint should have attached a copy of the Agreement, the absence thereof did not excuse Pass's failure to demand arbitration, since Pass acknowledged that its "closing attorney had all contracts of units which had closed in storage."  *See* Miss. R. Civ. P. 10(d).  Two-hundred-and-fifty-two (252) days after the Complaint was filed, Pass attempted to invoke a *contingent* affirmative defense of mandatory arbitration, dependent upon further rulings of a court, which is inconsistent with claiming an absolute right to arbitrate.  *See supra* ¶ 6.  Thus, Pass's participation in, and invocation of, the judicial process *vis-a-vis* arbitration was inconsistent with timely invocation of the arbitration process.  This Court has held that:

> when a party, with full knowledge of the existence of an arbitration clause in the contract which is the subject matter of the litigation, makes a conscious decision to proceed with responding to the lawsuit, demanding a jury trial, and invoking discovery only to thereafter invoke the arbitration clause, that party does so at its own peril . . . .

*In re Tyco Int'l (US) Inc.*, 917 So. 2d 773, 780 (Miss. 2005).  Accordingly, under the facts presented, Pass waived its right to compel arbitration.

**II.     Whether Alfonso, acting as Pass's agent, has a right to compel arbitration.**

¶14.   Lemon Drop first argues that Alfonso has no right to compel arbitration as a nonsignatory.  But under the Agreement, Alfonso is Pass's express agent.  *See supra* ¶ 2 (Alfonso "represent[s] the SELLER and IS NOT a Buyer's agent . . . .").  "An express agent is one who is 'in fact authorized by the principal to act on their behalf.'"  *McFarland v.*

6

*Entergy Miss., Inc.*, 919 So. 2d 894, 902 (Miss. 2005) (citation omitted). Consistent with

Mississippi law and the law of other states, Alfonso, as Pass's agent, had the right to compel

arbitration based on the Agreement between Pass and Lemon Drop.[4] *See Garcia v. Huerta*,

340 S.W.3d 864, 869 (Tex. App. 2011) ("[t]he scope of an arbitration agreement may be

extended to claims against agents of the principal when all the agents' allegedly wrongful

acts relate to their behavior as agents of the principal signatory company, and those acts were

within the scope of the claims covered by the arbitration provisions for which the principal

would be liable.") (citation omitted); *Kiskadee Commc'ns (Bermuda), Ltd. v. Father*, 2011

WL 1044241, at *5 (N.D. Cal. March 22, 2011) ("agents of a signatory can compel the other

signatory to arbitrate so long as (1) the wrongful acts of the agents for which they are sued

relate to their behavior as agents or in their capacities as agents . . . and (2) the claims against

the agents arise out of or relate to the contract containing the arbitration clause . . . .")

(citations omitted); *Sawyers*, 26 So. 3d at 1038 (quoting *B.C. Rogers Poultry, Inc. v.

Wedgeworth*, 911 So. 2d 483, 491-92 (Miss. 2005)) ("[a] non-signatory should have standing

to compel arbitration where the non-signatory has a close legal relationship, such as, alter

ego, parent/subsidiary, or agency relationship, with a signatory to the agreement."); *Amisil

Holdings Ltd. v. Clarium Capital-Mgmt.*, 622 F. Supp. 2d 825, 832 (N.D. Cal. 2007);

*Arnold v. Arnold Corp.*, 920 F.2d 1269, 1282 (6th Cir. 1990).

---

[4]The separate opinion agrees with this proposition. (Sep. Op. at ¶ 21) ("I agree that Alfonso does have the right, as an express agent of Pass, to compel Lemon Drop into arbitration based on the agreement between Pass and Lemon Drop.").

¶15. Lemon Drop alternatively argues that, even if Alfonso had the right to compel arbitration, Pass waived that right. But this Court previously has rejected the proposition "that one defendant may waive [a] defense on behalf of all defendants." *Am. Family Life Assurance of Columbus v. Ellison*, 4 So. 3d 1049, 1052 (Miss. 2009). In *Ellison*, the plaintiff filed a complaint against AFLAC and two of its agents, in their individual and corporate capacities, for breach of the duty of good faith and fair dealing. *See id*. at 1050. In its answer, AFLAC "asserted improper venue as one of its affirmative defenses." *Id*. The two agents filed a separate answer, but "failed to raise the defense of improper venue and, thus, waived it." *Id*. at 1050-51. Yet this Court recognized that the defense of improper venue was a personal defense that did not belong to one defendant exclusively, such that the agents' waiver did not waive the defense for AFLAC. *See id*. at 1051-52.

¶16. The same logic is controlling in this case. Pass's waiver is not imputed to Alfonso. We previously have stated that arbitration pertains to forum. *See Covenant Health & Rehab. of Picayune, LP v. Estate of Moulds*, 14 So. 3d 695, 697 (Miss. 2009). Moreover, arbitration is in the nature of an affirmative defense. *See* Miss. R. Civ. P. 8(c). As arbitration is a forum-related defense (i.e., an appropriate venue), emanating from arbitration law and provided for contractually in this case, a demand to arbitrate must be timely raised. The "Motion to Compel Arbitration" filed by Alfonso is akin to the Rule 12(b)(3) motion to transfer venue at issue in *Ellison*.[5] *See Ellison*, 4 So. 3d at 1050 ("the question presented is

_____

[5]In critiquing this Court's analysis as "overly simplistic[,]" the separate opinion contends that "[a]rbitration is a matter of contractual agreement, while venue is not." (Sep. Op. at ¶ 27). *Titan Indemnity Company v. Hood*, 895 So. 2d 138 (Miss. 2004), dispels that notion. There, this Court held a forum-selection clause that provided for "exclusive personal

8

whether the trial court abused its discretion when it denied the defendant's motion to transfer venue."). Stated succinctly, both a motion to compel arbitration and a motion to transfer venue challenge the forum where the dispute should be resolved. Furthermore, a motion to compel arbitration is no less personal than a motion to transfer venue. The decision to exercise the right to arbitrate, *vel non*, is often made for strategic reasons consistent with the client's best interests (e.g., familiarity with local courts; lack of discovery, without permission, in arbitration; the reputation of client and counsel in the community; cost considerations; preference for a jury trial as opposed to a decision rendered by arbitrator(s); etc.). Such strategy considerations undeniably are personal and may differ as between the principal and agent. In **Ellison**, AFLAC was not bound by its agent's decisions, strategic or otherwise,[6] resulting in the agents' waiver of the venue defense. *See id*. at 1049, 1052. Therefore, Pass's waiver is not imputed to Alfonso.[7]

---

jurisdiction *and venue* . . . in Bexar County, Texas" to be "binding and enforceable." *Id*. at 146, 151 (emphasis added). *See also* **Long Beach Auto Auction, Inc. v. United Sec. Alliance, Inc.**, 936 So. 2d 351, 355 (Miss. 2006) ("[f]orum selection clauses are 'presumptively valid and enforceable' . . . .") (citation omitted).

[6]By analogy, had the statute of limitations been at issue and not raised by the principal, we would not impute that waiver to the subsequently sued agent, denying him the opportunity to bring forth such a defense as to the claim(s) against him.

[7]The separate opinion's reliance upon **Aladdin Construction Company v. John Hancock Life Insurance Company**, 914 So. 2d 169, 175 (Miss. 2010), for maintaining that Pass's waiver of its right to invoke arbitration precludes Alfonso from "assert[ing] a separate right to arbitration for actions taken solely as the agent of Pass" because Alfonso "stepp[ed] into the shoes of Pass[,]" is misplaced, as **Aladdin** is plainly distinguishable. (Sep. Op. at ¶ 26). **Aladdin Construction** did not involve the contractual right to arbitrate or any waiver thereof. *See Aladdin Construction*, 914 So. 2d at 169. Rather, **Aladdin Construction** dealt only with the application of general agency-law principles in the context of a construction contract. *See id*.

¶17.	Although this is a matter of first impression for this Court, recent decisions in other states support the same conclusion. The only courts faced with this identical question have enforced arbitration agreements pleaded by nonsignatory agents for alleged wrongful acts related to their behavior as agents, holding that the principal's waiver of its right to arbitrate did *not* operate as a waiver of the agent's right to arbitrate under the same agreement. *See Garcia*, 340 S.W.3d at 869-70; *Kiskadee Commc'ns*, 2011 WL 1044241, at *6. In *Garcia*, the plaintiffs "asserted that [the principal's] express waiver . . . must be imputed to Garcia because he acted as [a nonsignatory] agent of [the principal], and his right to arbitration was therefore derivative of [the principal]." *Garcia*, 340 S.W.3d at 869-70. But the Texas appellate court rejected that assertion, determining that "[t]he [plaintiffs] cite *no* authority for this proposition, and *we cannot agree that one party's waiver of the right to arbitration can be imputed to another*." *Id*. at 870 (emphasis added). *See also Kiskadee Commc'ns*, 2011 WL 1044241, at *6 ("[p]laintiff reasons that [defendant-agents] should be bound by [the principal's] alleged waiver of the arbitration clause because '[j]ust as acts of an agent within the scope of the agent's powers bind his principal as a matter of law, acts of the principal are equally binding on the agent.' Plaintiff, however, does *not* cite any legal authority for this proposition. On the contrary, '[a] principal cannot bind its agent.' Accordingly, [the principal's] alleged waiver of the arbitration clause could *not* bind the [defendant-agents].") (citation omitted) (emphasis added). Like the plaintiffs in *Garcia* and *Kiskadee*

*Communications*, Lemon Drop has failed to cite any legal authority to support the contention that Pass's waiver should bind Alfonso.[8]

¶18. Given the presumption against the waiver of arbitration, and Alfonso's prompt "Motion to Compel Arbitration" after Lemon Drop filed its "First Amended Complaint," there can be no dispute that Alfonso timely and properly asserted its arbitration rights. *See Horton*, 926 So. 2d at 179-80.

## CONCLUSION

¶19. While Pass waived its right to compel arbitration, that waiver is not imputed to its agent, Alfonso. As there is no evidence of waiver by Alfonso, it should be entitled to proceed in arbitration. Therefore, as to Alfonso, the order of the Circuit Court of Harrison County granting arbitration is affirmed. But regarding Pass, the order of the Circuit Court of Harrison County granting arbitration is reversed and remanded for further proceedings consistent with this opinion.

¶20. **AFFIRMED IN PART; REVERSED AND REMANDED IN PART.**

**WALLER, C.J., CARLSON AND DICKINSON, P.JJ., LAMAR, CHANDLER AND PIERCE, JJ., CONCUR. KING, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY KITCHENS, J.**

**KING, JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

¶21. I concur with the Majority's result that Pass waived its contractual right to compel arbitration. However, I dissent from the Majority's holding that Pass's waiver of arbitration does not operate as a waiver of its agent's right to arbitrate. I agree that Alfonso does have

---

[8]Nor does the separate opinion.

the right, as an express agent of Pass, to compel Lemon Drop into arbitration based on the agreement between Pass and Lemon Drop. *Sawyers v. Herrin-Gear Chevrolet Co., Inc*., 26 So. 3d 1026, 1037 (¶32) (Miss. 2010) (citations omitted). Even so, in recognition of the application of agency principles, I respectfully dissent to the Majority's conclusion that Pass's waiver of arbitration is not imputed to Alfonso.

¶22. The Majority has held that *American Family Life Assurance of Columbus v. Ellison*, 4 So. 3d 1049, 1052 (¶¶11-13) (Miss. 2009), is applicable to the instant case, and a particular defendant cannot waive a defense on behalf of all defendants. I do not find *Ellison* applicable. In *Ellison*, Ellison filed a complaint against AFLAC and two agents, in their individual and corporate capacities, for a breach of duty of good faith and fair dealing. *Id*. at 1050 (¶2). AFLAC filed its answer and asserted improper venue as one of its affirmative defenses. The two agents filed a separate answer, but "failed to raise the defense of improper venue and, thus, waived it." *Id*. at 1051 (¶11).

¶23. The instant case is distinguishable from *Ellison*. The complaint does not specify that Alfonso is being sued in its individual capacity, and if the claims were against Alfonso in its individual capacity, the arbitration agreement would not apply. "A third party who is a non-signatory to a contract should not be able to enforce an arbitration agreement . . . where there is no alter ego, parent/subsidiary, agency, or other form of close legal relationship alleged . . . ." *Sawyers*, 26 So. 3d at 1039 (¶32) (citation omitted).

¶24. In *Ellison*, this Court recognized that the defense of improper venue was a personal defense that did not belong to one defendant exclusively. *Id*. at 1051 (¶11). Thus, this Court held that the agents' waiver of venue did not waive the defense for AFLAC. *Id*. The

12

Majority applies the holding from *Ellison* and states that "a motion to compel arbitration is no less personal than a motion to transfer venue." (Maj. Op. at ¶16). In seeking to support its position with *Ellison*, the Majority fails to realize that, under the facts of *Ellison*, any other holding would be completely contrary to agency law. While it is true that an agent may bind his principal, that does not apply where the principal has clearly, and in advance, adopted a contrary position. *Northlake Dev. L.L.C. v. BankPlus,* 60 So. 3d 792, 796 (¶13) (Miss. 2011).

¶25.    The right to arbitrate is purely contractual. *Qualcomm Inc. v. American Wireless License Group, LLC*, 980 So. 2d 261 (Miss. 2007). Pass's contractual right to arbitration was extended to Alfonso, only as an agent of Pass. Accordingly, Alfonso's right to arbitration is not a personal defense and should be governed according to the principles of agency.

¶26.    "[A]n agent is one who stands in the shoes of his principal; he is his principal's alter ego . . ." *Aladdin Constr. Co., Inc. v. John Hancock Life Ins. Co.*, 914 So. 2d 169, 175 (¶10) (Miss. 2005) (citation omitted). Pass waived its right to invoke arbitration. Thus, Alfonso, stepping into the shoes of Pass, had no right to assert a separate right to arbitration for actions taken solely as the agent of Pass, where Pass had chosen to waive that right.

¶27.    The Majority seems to suggest that a motion to compel arbitration and a motion to transfer venue are so similar that they must be treated the same. That view is overly simplistic. Arbitration is a matter of contractual agreement, while venue is not.[9] Venue

---

[9]In an effort to camouflage its overly simplistic analysis, the Majority takes out of context my view of venue. (Maj. Op. at n.5). If the Majority wishes to quote, it should do

refers solely to the forum in which the dispute is to be resolved. ***Blackledge v. Scott***, 530 So. 2d 1363, 1365 (Miss. 1988). By way of example; the question of whether a dispute is one which is properly tried in the Circuit Court of Panola County rather than the Circuit Court of Harrison County is determined by statute. *See* Miss. Code Ann.§ 11-1-3 (Rev. 2004). However, no matter where the proper venue lies, the process is the same. That process includes the application of the Rules of Civil Procedure, the application of the Rules of Evidence, the right to have matters of fact determined by a jury which is representative of the community, the right to have questions of law resolved by a judge, and, perhaps most important, the right to appeal any adverse decision. Arbitration not only changes the forum in which the dispute is to be resolved, it also changes these and other rights.

¶28. For the aforementioned reasons, I dissent to the Majority's conclusion that Pass's waiver of arbitration is not imputed to Alfonso.[10] I would hold that Pass waived the right for both itself and its agent, Alfonso.

---

an appropriate quote which places the statement in context. Such a quote would be:

> Arbitration is a matter of contractual agreement, while venue is not. Venue refers solely to the forum in which the dispute is to be resolved. ***Blackledge v. Scott***, 530 So. 2d 1363, 1365 (Miss. 1988). By way of example; the question of whether a dispute is one which is properly tried in the Circuit Court of Panola County rather than the Circuit Court of Harrison County is determined by statute. *See* Miss. Code Ann.§ 11-1-3 (Rev. 2004).

While venue may be subject of a contractual agreement, contrary to the suggestion of the Majority, venue is generally not a matter of contract.

[10]The Majority notes this issue to be a matter of first impression in this State, and then states the lack of authority to support the separate opinion. (Maj. Op. at n.8). Any reader can note that the only authorities which the Majority cites are nonbinding decisions from other jurisdictions. These decisions are doubtlessly just as wrong.

14

**KITCHENS, J., JOINS THIS OPINION.**